Esrey v. United States. Good morning. Good morning. George Clark on behalf of Appellants Bill Esrey and Ron LeMay. May it please the Court. The District Court dismissed my client's Federal Tort Claims Act case because it said that their claims were claims of misrepresentation, claims that are barred by the FTCA. But my clients have never alleged the IRS owed them a duty to tell them anything. E&Y did, but the IRS didn't. Instead, my clients have alleged that the IRS has a duty to properly regulate E&Y as a tax professional services firm and to refrain from soliciting and accepting bribes from those professionals. It's those acts, acts that are unconnected, also unconnected with the assessment and collection of tax, and not the acts or failings of E&Y that the Court has to consider in order to properly resolve the case. You have to try to separate those two sets of acts. I thought you were complaining that they concealed information from you all or provided misinformation. E&Y had a duty as a fiduciary to tell us that they were under criminal investigation and also had a duty to tell us that they paid a promoter penalty. No, no, but I'm talking about the IRS. The IRS had no such duty, Your Honor. What did they do wrong? Didn't they omit to tell you something? Didn't they fail to tell your clients about the criminal investigation? Isn't that the gravamen of the complaint? Absolutely not, Your Honor. It's irrelevant. It's not irrelevant. I mean, E&Y as a fiduciary, essentially like a lawyer, they had a duty to tell us that. The IRS has a set of regulations, the Office of Professional Responsibility, separate from the examining part of the IRS. It's almost like a state bar type organization. As a tax lawyer, I'm regulated both by the state bar and by this Office of Professional Responsibility. Regulations give you no cause of action. Your Honor, it's not about whether we have a cause of action. It's just like in Sheridan and just like in the Coast Guard case, they set a standard of conduct, a baseline standard of conduct. And the IRS... They have to owe you a duty then. And what's the duty they owe you? Your Honor, they don't have to owe us a duty under New York law if they take affirmative acts. The three things we have to prove under New York law is that the IRS... The IRS... What is your claim against the IRS? The claim is that they permitted Ernst & Young to continue to represent my clients when they knew they had a conflict of interest. They knew that conflict because they were told that by Ernst & Young. And they, instead of auditing the promoter penalties like they were supposed to, they were supposed to audit, determine a $13.6 million penalty, which they did determine, and assert that penalty. If E&Y had a problem with that, they would have paid it and sued for a refund to get it back. That would have been disclosed. It would have been open and notorious. E&Y would have had its position. But it was not disclosed. But it's not about... You said it would have been open and notorious, but it wasn't open and notorious because it wasn't disclosed. And the word penalty was taken out. And therefore, they didn't disclose something that your clients... To your clients cost. But it's not that IRS had a responsibility to disclose it. IRS had a responsibility to do its job. What's its job? Its job is to assert a $13.6 million promoter penalty. But the Taxi and Limousine Commission is supposed to keep the cabs clean. I take a dirty taxi cab. I can't sue the Taxi and Limousine Commission even though they have a duty to keep the cabs clean and to inspect them. Your Honor, this is in connection with a breach of a fiduciary duty that was in existence, that the IRS knew about, and the IRS affirmatively helped them breach that fiduciary duty. Two ways. They were supposed to properly regulate them. They did not properly regulate them, even knowing that they had a conflict of interest. And two, instead of just doing their job, $13.6 million, write it up. They said, no. E&Y told them, look, we can't pay the $13.6 million. We can't have it called a penalty. And IRS said, well, it needs to be called a penalty. And they said, well, we really can't pay that. Okay, you're going to have to sweeten the deal. Pay us more. Pay us more money. And we will conceal the fact that it's a penalty. We'll not just conceal it. We won't write it up as a penalty. That's a nondisclosure. That's a failure to disclose. It's not a failure. It's a failure to assert a penalty, Your Honor. The whole problem with this removal of the word penalty is it post-dates what you're complaining about here. But in any event, reduced to its essence, it's a claim of concealment, which is, we have recognized as akin to a misrepresentation and not actionable. It isn't a claim for concealment, Your Honor. They should have done their job. What that would have then flowed from that— You don't have a cause of action for them not doing their job as against Ernst & Young. Your Honor, we do if it helps E&Y hide something. This isn't about the IRS owing us a duty to tell us something. It's about them— Are you charging the IRS as an aider and abetter here? Yes. It's aiding and abetting breach of fiduciary duty. What's the basis for that claim? It's New York law, aiding and abetting a breach of fiduciary duty. That is our only claim. You were about to list the elements of that. Yes. So there's a breach of fiduciary duty, that there was substantial assistance provided by the third party, the aider and abetter, and that we were damaged. Those are the three elements. And so we have a breach of fiduciary duty by E&Y. We have substantial assistance in the form of permitting them to continue to represent them and not doing their job in asserting the proper penalty. But the problem is that the aiding and abetting act is an act of concealment, that they didn't tell you these things. They didn't do anything to affirmatively assist Ernst & Young in their dealings with you. They didn't reveal certain things. And that's—so this is an end run around the exception, it seems to me. Your Honor, that is not correct. What am I misunderstanding? All they had to do with respect to the—the way to fix the criminal investigation issue would be for the IRS to tell Ernst & Young, you can't continue to represent them. That's not telling us anything. That's not a misrepresentation to us. That's telling Ernst & Young, you either get—and this is in their own regulation. Why isn't that an omission itself? It's not an omission asked to us. It didn't even flow to us, Your Honor. But the cause of action is aiding and abetting a breach of fiduciary duty, right? It is, Your Honor. And you just said they omitted to tell them. They didn't omit to tell them. They permitted them to continue to represent in contravention to their own regulations. And this is the agency that regulates Ernst & Young, okay? That's an act. That's not passive. And so all they had to do—not tell us anything. They just had to— How do you connect your damages to that? Well— It seems like a very clunky series of connections, Your Honor. At the time that that criminal investigation was happening. Because it isn't as though—it isn't as though as a result of Ernst & Young's breach of the fiduciary duty that you've identified. Ernst & Young gave up the case or failed to defend your client. And therefore, your client was assessed a sum of money by the IRS that you otherwise wouldn't have had to pay. You have to go through a number of other linkages. Well, Your Honor, I would say with respect to damages, the most direct damage is if we had known that Ernst & Young was under criminal investigation, okay? If they knew? You mean if someone had told them? Ernst & Young would have told them. Not the IRS, okay? Ernst & Young would have told them. Ernst & Young would have withdrawn from their case. And at that point in time, they were fighting for their corporate lives with Sprint. And— You're saying that the IRS aided and abetted that act? They did. Was it not—the underlying act not an omission? Your Honor, the underlying act is not an omission. The underlying act is failure to regulate. And if they would have properly regulated, Ernst & Young couldn't have been representing my clients at that point in time. And so all of this, when they got to the Sprint board and they were having this discussion at the Sprint board, it would have been clear to the Sprint board what the decision was. If I can just speak real quickly to the Tax Exception Act, I want to make sure I cover that. And the easiest way to do that is the government's—the government's best argument on tax exception is the investor audits, okay? And I—the investor audits, which is the audits of Estrie and LeMay, certainly underlie this case. But the—and I'll just do this with an analogy because I don't have very many minutes left. If you were under exam, one of us was under IRS exam, and we went to the IRS building because we had to meet the agent or something like that, we slipped and fell on the steps, okay? That is not connected to the underlying examination. In this case, the acts that we're talking about are failure to regulate, which is not connected to the investor audits, okay? Accepting—soliciting and accepting a bribe, which is not connected to the investor audits, okay? Those things have nothing to do with the underlying investor audits. So the Tax Exception Act, the tax exception to the FTCA does not apply. I think I'll— Can you tell us what you think the failure to regulate is? They had them under criminal investigation. They needed to—in the— What did they fail to do with respect to the—when you say they failed to regulate? Because I'm trying to understand how that's different from not making them tell you that they were under investigation. Certainly are. It is telling them they can't represent us anymore. It's that simple. You can't represent them unless there's—unless they have a waiver, basically. That's what their own rules say. Does the IRS know that Ernst & Young did not elicit a waiver from your clients? They had an obligation at least to determine that. In fact, they didn't. Where does that come from? I mean, I know you're citing internal regulations that require that Ernst & Young not—under those circumstances, not represent other taxpayers on the same matter. But I'm not sure where you get to the—to your ultimate point here. It's— I mean, what is the—what is the—how does the IRS know that Ernst & Young didn't perform the duty that it had under these regulations? Your Honor, they're the regulator. They have at least a duty—and there's a Fifth Circuit case that we cite in our briefs. They at least have a duty to inquire. And they had—this was not a minor thing. This is Ernst & Young. It's one of the largest professional services firms. In the world. And they at least have a duty to inquire, do they have a conflict? Did they properly disclose that conflict? Okay. That—that's all you have to ask them to do. It's—it's a—it's a regulatory duty that's not a heavy burden, Your Honor. You've reserved a couple of minutes for advice. I have. We'll hear you then. Thank you. It's supposed to work. May it please the Court. We—we want it—we want it to work. Elizabeth Tulis, on behalf of the government. Good morning. The Court need only look to the complaint itself to understand why this claim arises out of misrepresentation. The plaintiffs allege that they were injured as a result, quote, of the IRS's active concealment of the criminal investigation and the truth about the tax shelter promoter audit. That's in their complaint. That's their description of their claim. And the Court is absolutely right that this claim arises out of misrepresentation based on allegations like that in the complaint. The other thing the Court needs to take into consideration is that this is a claim for aiding and abetting a breach of fiduciary duty. Elements are a breach of fiduciary duty, knowing participation in that breach of fiduciary duty, and damages resulting from the breach. The plaintiffs have not disputed that the underlying breach of fiduciary duty consists of misrepresentations. So what they are asking the Court to do— Misrepresentations by Ernst & Young. Yes. And they are asking the Court to— That's the way fiduciary duties usually work. They're asking the Court to find, however, that a claim that the IRS knowingly participated in those misrepresentations is not a claim arising out of misrepresentation. And that's absurd. The cases they cite, the cases involving negligence claims, for instance, in the context of Coast Guard duties or in the context of negligent supervision, that's a completely different context, and those aren't aiding and abetting claims. What you have here is a claim of knowing participation in the misrepresentations, even apart from the direct allegations in the complaint that they were injured by the IRS's, quote, concealment. With respect to the tax exception, briefly, this case is about the investor audits, if it is about anything. The plaintiff's contention that they're not taking issue with IRS actions— Can we go back to your first argument? Sure. About the allegations of the complaint. They said in their brief that there were two non-concealment acts alleged. The first was the IRS allowed Ernst & Young to continue to represent the plaintiffs in the investor audit in violation of the Treasury Circular, and the second, they removed that word penalty from that press release, and then there's a third about harm. But what about those two aspects of it? How are those misrepresentations or omissions? As the Court correctly observed, the allegation about removing the word penalty from the press release, even if it could have caused some injury that they allege, is itself an allegation of concealment. So that one is easily disposed of. And that one concealed the true nature of it? Is that what you're— That is what the plaintiffs say themselves in the complaint, that somehow not including the word penalty in the press release concealed the true nature of the promoter audit. That's their claim. Isn't your point that there's a causation problem because that disclosure took place after the breach? There is a causation problem. So we— Exactly. Well, there is a causation problem. But even setting aside the causation problem, if we could get past that, you would still have a misrepresentation claim. With respect to the argument that this is really about the IRS permitting Ernst & Young to represent the plaintiffs before the IRS, the problem with that is they don't allege  And even in their briefs on appeal, their argument for why this representation somehow injured them converges with an argument that by not barring Ernst & Young from representing them, the IRS failed to disclose information. Their argument is somehow if the IRS had barred Ernst & Young from representing us, it would have thereby disclosed the information that Ernst & Young was concealing. That's a bit of a contorted argument. That would have forced Ernst & Young to reveal information. Again, Your Honor, their argument is that the IRS would have indirectly disclosed information that otherwise it was helping to conceal. I don't believe that that argument makes sense. But that's the only argument they have for how the mere fact of representation is somehow connected to an injury that is based on a lack of information. With respect to the investor audits, the plaintiffs themselves in the complaint in order to establish venue in the Southern District of New York make a point of alleging that IRS employees working on the investor audits worked in New York, New York. They also allege that the investor audits were the context in which IRS employees interacted with them and that is the context in which the IRS would have somehow had an occasion to prevent what they consider a wrong. I mean, they don't identify any other context in which the IRS interacted with them and could have disclosed the information that they say was concealed. This complaint is about the investor audits and there is no dispute that the investor audits are part of the IRS's mechanism for assessing and collecting taxes. With respect to the promoter... They definitely knew that there was a CID investigation too, right? Into Ernst and Young? I'm sorry, Your Honor, could you clarify your question? The Criminal Investigation Division of the IRS was investigating Ernst and Young in conjunction with the Southern District of New York U.S. Attorney's Office. They were aware of that, right? It's the same agency. It's the IRS. Your Honor, I'm not sure that allegations of the complaint are actually pretty sparse about what Ernst and Young knew prior to the resignations from Sprint in 2003. I'm not sure how that's relevant to the question of whether this arises in respect of the investor audits. But even if the IRS CID was also conducting a criminal investigation, the point is, what does plaintiff's claim of injury with respect to themselves arise out of? What IRS employees... Which IRS employees are the ones alleged to have conducted some wrongful act? And those IRS employees are the IRS employees working on the investor audits. I thought your argument was partly that the investor audits are completely separate from what's going on with Ernst and Young, where the four employees get indicted by the Southern District of New York grand jury, found guilty at trial, and Ernst and Young pays $123 million penalty itself. I mean, these are not ships passing in the night, right? Your Honor... And the investor audits brought the same thing about tax shelters. Yes, Your Honor. They were about the same thing. They were about trying to collect the accurate amount of taxes for these tax shelters. And there's no dispute in this case that the investor audits are part of... Activities conducted in the course of the investor audits would fall within the exception in 28 U.S.C. 2680C, which is the exception for claims arising in respect of the assessment or collection of any tax or customs duty. There's been no dispute about that, about the investor audits being covered by that exception. Your Honor, I would address briefly this question of the IRS regulations. They're not relevant to the question of whether the exceptions in 2680 apply, but the court is correct that they didn't impose any requirements on the IRS that are alleged to have been violated here. How does the IRS perform the responsibility that your adversary has identified? I mean, there is an internal requirement that they make sure that any accountant is under criminal audit, I guess, should make sure that the IRS should make sure that they don't represent taxpayers. Your Honor, I can't speak to the technicalities of what the IRS does in that circumstance, and there certainly are no allegations in the complaint. Looks like they don't do anything, but that's another matter. It's not relevant to the questions before the court today. And in any case, an internal requirement like the IRS manual or internal guidance wouldn't provide any rights to taxpayers. But again, that issue is completely irrelevant to whether the misrepresentation exception H in 2680 C. Accordingly, we ask that the court affirm the district court's dismissal of this case. Thank you. We'll hear rebuttal. It goes up higher. Okay. Well, hopefully I'm getting picked up at that point. Just a few points. One, these are not internal policies. It's a regulation. 31 U.S.C., as Title 31 and Circular 230 is a regulation. It is not internal policy. With respect to the damages and the promoter audit versus investor audit, the actions that were bad took place in the promoter audit. They did not take place in the investor audit. They took place in the criminal investigation. They took place in the promoter audit. Every single event took place there. Nothing bad happened in the investor audits. Again, it's like the slip and fall example I gave before. Yeah, they were under audit, and they were coming. That's a background fact. That's true. But it's not where the harm took place. And the statute says in respect of assessment and collection of tax. These harms did not arise out of in respect of assessment and collection of tax. With respect to causation between the breach, the promoter audit breach, and the end of 2003, we absolutely did plead that we had increased arbitration costs associated with that nondisclosure. If you look at our complaint in paragraph 57, it has that work, and why isn't that speculative and beyond anyone's capacity to estimate? I don't think it's speculative, Your Honor, that when you're in an arbitration with the service provider that sold you something, there's a question about did they violate the law. That's fundamental. Did they violate the law? And not knowing about the promoter penalty up until that point in time definitely impacts your ability to recover. They had to fight to get Ernst & Young to actually admit, yeah, we did violate the law. They did finally admit it, but they had to fight to get them to admit it. And so your claim against the IRS here is the failure of the IRS to disclose that it was a penalty. They had no obligation to disclose, Your Honor. They had an obligation to write up the penalty number, at which point in time, Ernst & Young would have had to pay it and sue for a refund. That's nothing to do with the IRS disclosure. That's just the law. Just do your job. Write the penalty up. They pay it. They sue for a refund. That's not about misrepresentation from the government's perspective. That's just about doing what you're supposed to do. I think also the final point with respect to causation on the criminal investigation, the idea that Sprint, when it was evaluating Ernst & Young or Esri & LeMay, do I fire these people or do I fire the auditor, wouldn't have been impacted by the fact that Ernst & Young was under criminal investigation. They would have been impacted by that. The IRS had no obligation to tell them that, but the fiduciary did. The fiduciary did. The argument, though, that counsel for the other side has just made is that if the IRS could not be liable as a principal misrepresenter, how could it be liable as an aider in a bedder of misrepresentations or omissions? What's your response to that? The law doesn't require that, Your Honor. The law requires substantial assistance. What substantial assistance? Substantial assistance of a matter that they could not be liable for. I mean, it does seem curious to suggest that they cannot be liable for misrepresenting, but they can be liable for assisting someone else in misrepresenting. I don't think that's curious, Your Honor. Do you have any law that says that that is how we could interpret the exception? Your Honor, I don't think that came up in the district court, and I certainly don't think we briefed that on a specific— But that's your theory. What's the basis for that theory, that they aided and abetted another party's misrepresentation when they can't be liable for misrepresenting? The government has no law on that, Your Honor. I mean, all it says is substantial assistance, Your Honor, and the only thing that we have in our New York laws, it says it has to be some sort of affirmative act. That's the test. And we have affirmative acts. We have permitting them to continue to go forward even though they can't regulate. But the Supreme Court has said a number of times that it's not how you label the cause of action. It's what the gravamen of the factual allegations are. Aren't they misrepresentations? Absolutely not, Your Honor. It's failure to regulate, and it's failure to do your job. But the harm is caused by the misrepresentation of Ernst and Young. Now, you can be liable for the misrepresentation either because you're the principal or because you aided and abetted the principal. But either way, the action is for misrepresentation. Your Honor, it's not for misrepresentation. You keep saying that. Well, I mean, the action at the end of the day is the regulation rule and the fact that they didn't properly do their job. It's not about misrepresentation. They would have had to have a duty to misrepresent. Asked a misrepresentation as a Good Samaritan violation by invoking a regulation. We've held that. Your Honor, that's not what we're doing. I mean, what we're looking at is an independent obligation that's separate and apart. It's just like Sheridan, right? In Sheridan, the bullets impacting that car are absolutely a battery, okay? But you say, well, what else happened in that chain of events? Well, we have other things that happened in that chain of events. This case is just like Sheridan from that perspective. Just because at the end, there was what would have been an intentional tort, doesn't mean that there might not be something else in there. And just because at the end, there's a misrepresentation, it doesn't mean that there isn't a prior tort that can give rise to liability, just like Sheridan. You're not injured by the prior action until there's the misrepresentation. That's the problem for you. You have no distinct injury from the misrepresentation. The people that were being shot at in that car in Bethesda had absolutely no harm except for those bullets flying through their window. That's it. It was the prior liability. It's exactly the same thing, Your Honor. It's in the chain of events. If the government simply hadn't enforced its regulations and that person never had pulled the trigger and shot the bullets at them, they would have no harm. Thank you. Thank you. Both. We'll reserve decision.